## THE STATE BANK VS. ETTER.

Where an execution is issued to another county, and levied upon land, and the defendant dies and the execution is returned without a sale of the property, it is necessary to revive the judgment before the lien can be enforced.

A judgment creditor, after levy of his execution upon the lands of the debtor in another county, and the death of the debtor, orders the execution to be returned without sale; but neglects to revive his judgment against the representatives of his debtor, or pursue his lien for two and a half years: HELD. That the judgment creditor, under the circumstances, has displaced his lien, and cannot set it up against the title of one who had in the mean time purchased the property at a sale, under the statute, by the administrator of the judgment debtor.

*Appeal from Hempstead Circuit Court in Chancery.*

Hon. SHELTON WATSON, Circuit Judge.

S. H. HEMPSTEAD, for the appellant.

PIKE & CUMMINS, and CURRAN, contra.

Mr. Justice WALKER delivered the opinion of the Court.

This was a suit commenced in the Hempstead Circuit Court in Chancery, to enjoin the sale of certain lands under a judgment and process at law.

The material facts set forth in the bill are, that, on the 23d of April, 1847, the Bank recovered a judgment, in the Pulaski Circuit Court, against John W. Cocke, upon which execution issued, on the 3d day of September, 1849, directed to the sheriff of Hempstead county, and was by him levied upon real estate there situate, the property of the defendant. After the levy, the execution was, by order of the Bank, returned without a sale of the property. A few days after the levy, Cocke, the defendant, died, and in the due administration upon his estate, under an order of the Probate Court, the administrator, on the 25th of December, 1850, offered the land so levied upon for sale, and the complainant, being the highest bidder, became the purchaser thereof, took a regular conveyance by deed, and entered upon and improved the property, well knowing, at the time of his purchase, that the land had been levied upon to satisfy the aforesaid judgment.

Afterwards, on the 2d day of March, 1852, the Bank sued out a writ of *vend. ex.*, directed to the sheriff of Hempstead county, by which he was commanded to expose the lands to sale, and in obedience to which he advertised the property for sale. To prevent which, and to quiet his title, Etter, the purchaser at the administrator's sale, has brought this suit.

The judgment against Cocke was rendered in the Pulaski Circuit Court, and was, therefore, not a lien upon the real estate of the defendant, situate in Hempstead county. The 27*th sec.*, *ch.* 67, *Dig.*, makes executions a lien upon real estate, to which the judgment lien does not extend, from the time the writ is delivered to the officer to be executed. The levy, therefore, created a specific lien upon the property taken in execution, but as no sale was made under that process, and as the defendant

died before the return thereof, and before an alias writ issued to sell the property levied upon, the question is, after the death of Cocke, the defendant in execution, had the plaintiff a right to further process, to sell the property so taken in execution and returned unsold. This is a question of much difficulty, in view of the qualified interest acquired by the creditor in the estate, by virtue of his levy, and also of our administration law, which provides a general system for the payment of all debts, as well those judicially ascertained as those unliquidated.

It is very true that, by virtue of the levy, there was created a qualified interest in the property, in so far that it was held in custody of the law, and was prima facie a satisfaction of the judgment, but notwithstanding this, the legal title to the property still remained in the defendant until his death, and after that, it passed to the heir or devisee, subject to the qualified interest of the administrator, in case it should become necessary to sell the same for the payment of the debts of the testator or intestate.

If we admit it to be true, that the judgment creditor, by virtue of his levy, had acquired a lien upon this particular property for the satisfaction of his debt, it by no means follows that he should be allowed to assert such rights by enforcing his lien irrespective of the rights and interests of the heir and the administrator.

By the common law, all proceedings are stopped by the death of either party, until regularly revived in behalf of, or against, the party interested in the prosecution, or the defence of the suit; and by statute (*Dig.*, *ch.* 93, *sec.* 18,) it is provided that judgments or decrees may be revived against the administrator, if for money, &c., or the heir, if touching the realty. Therefore, whether by the common law or by statute, it was in any event necessary to revive the judgment, before the lien could be enforced. Such was the opinion of the Supreme Court of New York, in *Stymets vs. Brooks*, (10 *Wend.* 210,) where it was held, that after the death of the defendant, no execution can run either against the heir, or the personal representative, without *scire facias*, because, until the judgment is revived, there would be a

discrepancy between the process and the judgment, and because the parties in interest have a right to day in Court, that they may show cause, if any, against the application of the property to the payment of the judgment. In *Bently vs. Cummins' Adm.*, (4 *Eng.* 487,) it was expressly held, by this Court, to be error, after the death of the defendant in execution, to sue out execution before the administrator is made a party.

The Supreme Court of Alabama sustains the issuing of a second writ of *fi. fa.* after the death of the defendant, without reviving the judgment against the administrator or heir, in case the first writ was executed in the life-time of the defendant, upon the ground that it is necessary to do so in order to uphold the execution lien. Such was the decision of that Court in *Horn vs. Collingsworth*, (4 *Stewart & Porter* 237.) But this decision and the Alabama doctrine, were reviewed by Chief Justice SHARKEY, in *Davis et al. vs. Helm*, (3 *Sm. & Marsh.* 34,) and expressly overruled. He denies that the question of lien or no lien has any thing whatever to do with the question of reviving by *scire facias*, and expressly rests his decision upon the ground, that whether the lien is a judgment lien, or an execution lien, still the party in interest in the property should have day in Court, before the property is exposed to sale, that he may show payment, release or any other matter of defence, and that this defence is equally available whether there is a lien or not.

These authorities are clear and conclusive as to the question of reviving the suit by sci. fa., after the death of the defendant, before process can issue for satisfaction of the judgment, whether there is or is not a lien upon the property. And, as in this case, the execution issued against the defendant, Cocke, after his death, and without revivor against the heirs or the administrator, there can be no doubt that the execution should have been quashed, or the plaintiff restrained from selling the property.

But there is another view, in which this question may be considered, which involves it in much difficulty, owing to the general provisions made by our statute for the payment of all debts against

the estates of deceased persons. It is very evident that the Legislature intended to provide for every description of claims, whether judicially ascertained to be due or not, and to provide for their payment, giving preference to such as were esteemed most meritorious. Judgment creditors are specially provided for, and where the judgment is a lien upon the real estate, the debt is placed in the third, which is a more favored class than that of ordinary debtors. Such creditors are not, however, permitted to assert their right to exclusive satisfaction out of the estate, upon which the lien exists, but must take under the administration law. Thus, in *Adamson et al. vs. Cummins' Admr.,* (5 *Eng.* 549,) where judgment was rendered in the Circuit Court against the administrator, upon which execution issued, and was levied upon the property of the intestate, it was held that the execution irregularly issued, and should be quashed, for the reason that, after the death of the debtor, his whole estate passed to the administrator, or rather into the custody of the law, to be disposed of under the direction of the Court, for the payment of debts *pro rata,* according to priorty of right to satisfaction. And the more recently decided case, (*Walker, admr. vs. Byers,* 14 *Ark. Rep.* 252,) in reference to the general scope and purpose of the statute, the court said, "In this system, two capital objects seem plainly in view, from the various provisions for their attainment: *First,* that the estate of every deceased person, after death, shall immediately pass to the custody of the law, to be administered for the benefit of creditors, and after the satisfaction of all claims presented, &c., the residue to pass to the heir or distributees."

Upon the authority of these decisions, if no levy had been made upon the property of the intestate before his death, we should not hesitate to decide that a sale under judicial process from the Circuit Court, would be irregular, and that the plaintiff might well be restrained from enforcing a sale of property under it. But what shall we say of the execution lien? If the sale had progressed, and been made at the return term of the writ, under which the levy was made, even though the defendant had after

levy and before sale, died, there would be strong reason for holding the sale valid; but after the return of the process, we have held, both upon principle and authority, that no further process can issue until the judgment is revived by *sci. fa.* against the parties in interest in the estate so levied upon, and the point of difficulty is, conceding, as we must do, that the levy created and held a lien when the writ was returned, what shall be the effect of the levy? Shall we give the plaintiff a right to revive the judgment, and sue out process for the sale of the property? If so, it evidently evades the general provisions of the administration law, by permitting one judgment creditor to make his whole debt out of the estate of the debtor, to the exclusion of the rights of all others; or shall we place the judgment creditor upon the same footing that judgment lien creditors are placed? If we go beyond this, and give greater effect to the execution lien, and follow it up to sale of the property levied upon, how long a time shall the judgment creditor be allowed to revive his judgment, and how long will the execution lien hold the property? The statute is silent upon this subject. There is no law to fix their limits, or declaring what shall amount to a waiver of the lien. Judgment liens are by statute limited to three years, and we have held that mere delay to sue out process for satisfaction within that time, will not displace the lien; but here, where there is no limitation by statute, unless a different rule be applied to execution liens, they might remain an incumbrance upon the estate until the right to satisfaction of the judgment is barred by limitation. These difficulties are pressed upon our consideration in the case before us. On the 3d of September, 1849, a levy was made, and by the voluntary act of the plaintiff, the writ was returned without a sale of the property, and no steps taken to revive the judgment against the representatives of the deceased defendant, nor any process for the satisfaction of the judgment, until the 2d of March, 1852, two years and a half after the levy, and near fifteen months after the property had been sold by the administrator. The judgment debt was never presented to the administrator, nor

35BB

filed for classification and allowance against the estate. Under these circumstances, we are of opinion that even conceding the right of the judgment creditor, who has had a levy upon the debtor's property before his death, to revive the judgment against the representatives of the deceased, and follow up his lien for the satisfaction of his debt, that by the order and directions of the plaintiff, his failure to revive the judgment, and to sue out process for the length of time herein shown, was sufficient to displace his lien upon the property. And, in thus deciding, we are not to be understood as in any respect changing the rule heretofore laid down with regard to jugment liens; for as regards these, the statute has limited the continuance of the lien, but with regard to execution liens, the statute is silent, and the court must necessarily determine, from delay and other circumstances, whether the lien has been waived or abandoned.

There is much good reason for placing jugment creditors, who have liens by force of the jugment, or the levy, upon the same footing after the death of the debtor; indeed it is difficult to preserve unimpaired the general provisions of the administration law in any other way, and particularly in cases where the property remains in the possession of the debtor, at the time of his death. The levy, in no case, changed the title to the property; and although a specific lien is thereby created upon it, the same general policy, which requires judgment lien creditors to give up the exclusive right to satisfaction out of the debtor's property over other creditors, which the lien had conferred, may upon principle be applied to execution liens also. But be this as it may, in the cause now under consideration, we are satisfied that no execution, after the death of the defendant, could regularly issue until the judgment had been revived against the representatives of the intestate, and that had this been done, and admitting the right of the plaintiff to sell the property levied upon by virtue of his execution lien, which we think very questionable, that the plaintiff, under the circumstances of the case, displaced his lien, and con-

sequently cannot set it up successfully against the after acquired rights of the complainant.    Let the decree be affirmed.

Mr. Chief Justice WATKINS not sitting in this case.